James T. Markus *(pro hac vice)*
Matthew T. Faga *(pro hac vice)*
Jennifer Salisbury *(pro hac vice to be pending)*
Lacey Bryan (*pro hac vice*)
**MARKUS WILLIAMS YOUNG &
HUNSICKER LLC**
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: jmarkus@markuswilliams.com
Email: mfaga@markuswilliams.com
Email: jsalisbury@markuswilliams.com
Email: lbryan@markuswilliams.com
*Counsel for the Debtors-In-Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Chapter 11 |
| | Judge Kevin R. Anderson |
| MERIDIAN RESTAURANTS UNLIMITED, LC, *et al.*, | Jointly Administered Under Bankruptcy Case No. 23-20731-KRA |
| Debtors-in-Possession. | [Filed via ECF] |
| MERIDIAN RESTAURANTS UNLIMITED, LC; LOVELOUD RESTAURANTS, LC; AZM RESTAURANTS, LC; HR RESTAURANTS, LC; MR RESTAURANTS, LC; NDM RESTAURANTS, LC; and NKS RESTAURANTS, LC, | Adv. Proc. No. 23-_____-KRA |
| Plaintiffs, | |
| v. | |
| VARILEASE FINANCE, INC., and CITY NATIONAL BANK, individually and as administrative agent for City National Bank and Bridge Funding Group, Inc., | |
| Defendants. | |

1

## COMPLAINT

Plaintiffs Meridian Restaurants Unlimited, L.C. ("Meridian"), Loveloud Restaurants, L.C. ("Loveloud"), AZM Restaurants, L.C. ("AZM"), HR Restaurants, L.C. ("HR"), MR Restaurants, L.C. ("MR"), NDM Restaurants, L.C. ("NDM"), and NKS Restaurants, L.C. ("NKS"), debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases (collectively, the "Debtors" or the "Plaintiffs"), by and through their undersigned counsel, hereby file this complaint (the "Complaint") against defendant Varilease Finance, Inc. ("Varilease") and defendant City National Bank ("CNB"), as administrative agent for City National Bank and Bridge Funding Group, Inc., for (I) a determination that Varilease does not hold legal or equitable title to certain estate property, or, alternatively, that Varilease's interest is encumbered by the Bank's security interests therein; (II) avoidance and preservation of CNB's lien pursuant to 11 U.S.C. §§ 544 and 551; (III) avoidance and recovery of preferential transfers to CNB under 11 U.S.C. §§ 547 and 550; (IV) avoidance and recovery of preferential transfers to Varilease under 11 U.S.C. §§ 547 and 550; (V) avoidance and recovery of post-petition transfers to Varilease under 11 U.S.C. §§ 549 and 550; and (VI) disallowance of Varilease's Claim under 11 U.S.C. § 502(d).  In support of their causes of action against the Varilease and CNB (collectively, the "Defendants"), Plaintiffs allege and aver as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Utah ("Bankruptcy Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and (e), and 28 U.S.C. § 157(a).

4893-3597-5038, v. 5

2.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(A), (B), (E), (F), (K), and (O).

3.      This adversary proceeding is commenced pursuant to 11 U.S.C. §§ 502(d), 544(a), 547(b), 549(a), 550(a) and 551, and Fed. R. Bankr. P. 3007(b) and 7001(1), (2), and (9).

4.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

5.      Pursuant to Fed. R. Bankr. P. 7008, Plaintiffs consent to entry of final orders or judgment by the Bankruptcy Court.

## PARTIES

6.      Plaintiff Meridian is a Utah limited liability company with its principal place of business at 5929 Fashion Point Dr., Ste. 501, South Ogden, UT 84403.

7.      Plaintiff Loveloud is a Utah limited liability company with its principal place of business at 5929 Fashion Point Dr., Ste. 501, South Ogden, UT 84403.

8.      Plaintiff AZM is a Utah limited liability company with its principal place of business at 5929 Fashion Point Dr., Ste. 501, South Ogden, UT 84403.

9.      Plaintiff HR is a Utah limited liability company with its principal place of business at 5929 Fashion Point Dr., Ste. 501, South Ogden, UT 84403.

10.     Plaintiff MR is a Utah limited liability company with its principal place of business at 5929 Fashion Point Dr., Ste. 501, South Ogden, UT 84403.

11.     Plaintiff NDM is a Utah limited liability company with its principal place of business at 5929 Fashion Point Dr., Ste. 501, South Ogden, UT 84403.

12.     Plaintiff NKS is a Utah limited liability company with its principal place of business at 5929 Fashion Point Dr., Ste. 501, South Ogden, UT 84403.

4893-3597-5038, v. 5

13.     Defendant Varilease is a Michigan corporation with its principal place of business at 2800 East Cottonwood Parkway, 2nd Floor, Salt Lake City, UT 84121.

14.     Defendant CNB, individually and as administrative agent for City National Bank and Bridge Funding Group, Inc., is a national banking association organized under the National Bank Act and operates pursuant to a certificate of authority issued by the Comptroller of the Currency.  CNB is headquartered in Los Angeles, California.

## GENERAL ALLEGATIONS

15.     On March 2, 2023 (the "Petition Date"), the Debtors separately filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") in the Bankruptcy Court.

16.     On April 6, 2023, the Court entered its *Final Order Authorizing and Directing the Joint Administration and Procedural (but not Substantive) Consolidation of Related Cases* (Case No. 23-20731-KRA, Dkt. 150) (the "Joint Administration Order") pursuant to which the Debtors' chapter 11 cases are jointly administered for procedural purposes only under *In re Meridian Restaurants Unlimited, LC,* Case No. 23-20731-KRA.

17.     Meridian is the sole member and 100% owner of Loveloud.

18.     Loveloud is the sole member and 100% owner of AZM, HR, MR, NDM and NKS.

19.     As of the Petition Date, AZM, HR, MR, NDM and NKS (collectively, the "Operations Plaintiffs") operated one-hundred sixteen (116) Burger King restaurants (the "Restaurants").

20.     At all times, the Operations Plaintiffs managed operations for the Restaurants.

21.     As of September 1, 2023, the Operations Plaintiffs operated ninety-three (93) Restaurants.

4

22.     The Operations Plaintiffs operate the Restaurants in nine (9) states: Utah, Montana, Wyoming, North Dakota, South Dakota, Minnesota, Nebraska, Kansas, and Arizona.

23.     The Operations Plaintiffs owned all assets relevant to operating their respective Restaurants.

24.     The real estate leases for each of the Restaurant locations designate the Operations Plaintiffs as the respective lessees.

25.     Meridian never owned any assets relevant to operating the Restaurants.

26.     Loveloud never owned any assets relevant to operating the Restaurants.

27.     On July 10, 2023, Varilease filed Proof of Claim No. 106-1 against Meridian in Meridian's bankruptcy case in the amount of $195,406.51 (the "Varilease Claim").

28.     On July 10, 2023, BFG filed Proof of Claim No. 76-1 against all Debtors in Meridian's bankruptcy case in the unsecured amount of $22,841,174.02.

29.     On July 10, 2023, CNB filed Proof of Claim No. 78-1 against all Debtors in Meridian's bankruptcy case in the unsecured amount of $29,894,409.52.

30.     On July 10, 2023, CNB, as agent for CNB and BFG, filed Proof of Claim No. 87-1 against all Debtors in Meridian's bankruptcy case in the unsecured amount of $52,735,583.54.

**A.  Transaction between Operations Plaintiffs, CNB and BFG**

31.     On February 26, 2018, the Operations Plaintiffs, as borrowers, and Meridian and Loveloud, as guarantors, executed a Credit Agreement with CNB and Bridge Funding Group, Inc. ("BFG", and collectively with CNB, the "Lenders") for the financed purchase of certain Burger King franchises and related operations equipment.  A true and complete copy of the Credit Agreement, as amended and modified by a first amendment to credit agreement, dated as of

February 1, 2019, and a second amendment to credit agreement and waiver, dated as of March 13,

2019 (collectively, the "Credit Agreement"), is attached hereto as **Exhibit 1**.

32.     Pursuant to the Credit Agreement, Lenders agreed to provide loans and extensions

of credit to the Operations Plaintiffs in an aggregate amount of up to $61,500,000, consisting of a

Term Loan A-1 Facility in an aggregate principal amount of $40,500,000, a Term Loan A-2

Facility in an aggregate original principal amount of up to $18,000,000, a Term Loan A-3 Facility

in an aggregate principal amount of $4,400,000, and a Revolving Facility in an aggregate original

principal amount of up to $3,000,000 (collectively, the "Facilities").

33.     The Loans are further evidenced by the Revolving Note, the Term Loan A-1 Note,

the Term Loan A-2 Note and the Term Loan A-3 Note (collectively and as amended, restated,

supplemented and/ or modified from time to time, the "Notes").

34.     CNB and the Lenders Plaintiff and Lenders each advanced funds to the Operating

Plaintiffs pursuant to the Credit Agreement, the Notes and the other loan documents

35.     The Operating Plaintiffs used the loans to fund the acquisitions and operations of

multiple Burger King franchises across various states, including Utah, Idaho, North Dakota,

Minnesota, Montana, Arizona, Kansas, Nebraska, and South Dakota.

36.     In order to collateralize their obligations under the Credit Agreement and the Notes,

the Operations Plaintiffs executed a Security Agreement dated February 26, 2018 (the "Security

Agreement") thereby granting CNB, as administrative agent for the benefit of CNB and BFG, a

security interest in all collateral described in the Security Agreement, including, among other

things, (i) all machinery, equipment, supplies, furniture and fixtures together with all additions and

accessions thereto; (ii) all inventory, instruments, chattel paper, accounts, payment rights, licenses,

contracts, leases cash, and general intangibles (each as defined in the Security Agreement),

6

together with all accessions, additions, replacements, and substitutions relating to any of the foregoing; (iii) all records of any kind relating to any of the foregoing; and (iv) all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).  A true and complete copy of the Security Agreement is attached hereto as **Exhibit 2**.

37.     On or about February 26, 2018, CNB filed the following UCC-1 financing statements with the Office of the Secretary of State of Utah to perfect its security interests in Operations Plaintiffs' assets:

a.     CNB's UCC-1 financing statement concerning its security interest in NDM's assets is recorded at filing no. 537677201841;

b.     CNB's UCC-1 financing statement concerning its security interest in MR's assets is recorded at filing no. 537682201838;

c.     CNB's UCC-1 financing statement concerning its security interest in AZM's assets is recorded at filing no. 537679201843;

d.     CNB's UCC-1 financing statement concerning its security interest in HR's assets is recorded at filing no. 537683201839; and

e.     CNB's UCC-1 financing statement concerning its security interest in NKS's assets is recorded at filing no. 537684201840.

Collectively, hereafter, CNB's security interests in the Operations Plaintiffs' respective assets are referred to as "CNB Security Interests" and CNB's financing statements are referred to as "CNB Financing Statements."

38.     On June 1, 2020, the Plaintiffs entered into a forbearance agreement with the Lenders, as amended and modified by an amendment to forbearance agreement on August 17, 2020 and a second amendment to forbearance agreement on January 20, 2022 (collectively, the

"Forbearance Agreement").  A true and complete copy of the Forbearance Agreement is attached hereto as **Exhibit 3**.

39.     Prior to the Petition Date, Plaintiffs defaulted on their obligations under the Credit Agreement and the Forbearance Agreement.

40.     Prior to the Petition Date, CNB provided seventeen separate default letters to the Plaintiffs, dated August 12, 2020, February 19, 2021, May 12, 2021, May 24, 2021, August 11, 2021, August 25, 2021, September 16, 2021, November 10, 2021, February 16, 2022, March 25, 2022, April 21, 2022, June 16, 2022, August 22, 2022, September 23, 2022, October 6, 2022, November 21, 2022, and December 15, 2022.

41.     To extend the effectiveness of the CNB Financing Statements beyond five years, CNB was required to file UCC-1 continuation statements on or before February 23, 2023.

42.     CNB failed to timely file continuation statements for the CNB Financing Statements on or before February 23, 2023.

43.     As of February 24, 2023, the CNB Financing Statements lapsed.

44.     As of February 24, 2023, the CNB Security Interests were no longer perfected from that date forward.

45.     Within ninety (90) days before the Petition Date, on January 1, 2023, Meridian paid $223,420.39 to CNB (the "CNB Pre-Petition Transfer").

**B.  Transaction between Meridian and Varilease**

46.     In July 2022, Meridian entered discussions with Varilease for the sale of Meridian's assets to Varilease whereupon Varilease would lease said assets back to Meridian.

4893-3597-5038, v. 5

47.     On July 20, 2022, Meridian and Varilease agreed to terms and executed a written Sale Leaseback Agreement.  A true and complete copy of the Sale Leaseback Agreement is attached hereto as **Exhibit 4**.

48.     The Sale Leaseback Agreement transaction was structured through subsequent piecemeal sales of assets in exchange for money.

49.     Meridian and Varilease memorialized these subsequent transactions through the execution of certain Authorizations for Progress Payments (collectively, the "Authorizations").

50.     Seven Authorizations were executed between Meridian and Varilease on the following dates, true and complete copies of which are attached hereto as **Exhibit 5**:

     a.     Authorization for Progress Payment No. 1 – August 10, 2022 ("Authorization 1");

     b.     Authorization for Progress Payment No. 2 – October 10, 2022 ("Authorization 2");

     c.     Authorization for Progress Payment No. 3 – October 14, 2022 ("Authorization 3");

     d.     Authorization for Progress Payment No. 4 – November 1, 2022 ("Authorization 4");

     e.     Authorization for Progress Payment No. 5 – November 1, 2022 ("Authorization 5");

     f.     Authorization for Progress Payment No. 6 – November 1, 2022 ("Authorization 6"); and

     g.     Authorization for Progress Payment No. 7 – November 29, 2022 ("Authorization 7").

9

51.     In connection with the execution of the Authorizations, Varilease wired sums of money to Meridian in the following amounts at the following dates (collectively, the "Authorization Payments"):

    a.    $816,744.42 – August 12, 2022 ("Authorization Payment 1");

    b.    $499,771.36 – October 11, 2022 ("Authorization Payment 2");

    c.    $390,497.29 – October 18, 2022 ("Authorization Payment 3"); and

    d.    $583,690.40 – December 2, 2022 ("Authorization Payment 4").

52.     Varilease made the Authorization Payments to fund existing assets.

53.     The assets specified within Authorizations 1, 2, 3, and 7 (collectively, the "Operations Plaintiffs Authorization Assets") were owned by Operations Plaintiffs, not Meridian, and were subject to CFB's pre-existing perfected security interest in the Operations Plaintiffs' assets.

54.     Authorizations 1, 2, 3, and 7 referenced the Operation Plaintiffs Authorization Assets which were already installed at the respective Operation Plaintiffs' Restaurants.

55.     At no time did Operations Plaintiffs transfer, assign, or otherwise convey any legal or equitable ownership interests in the Operations Plaintiffs Authorization Assets to Meridian.

56.     At no time did Loveloud, the sole owner and 100% owner of the Operations Plaintiffs, authorize or acknowledge the transfer, assignment or conveyance of legal or equitable ownership interests in the Operations Plaintiffs Authorization Assets to Meridian.

57.     The assets reflected within Authorizations 4, 5, and 6, ("collectively, the New Assets") were purchased by Varilease from certain vendors directly.

58.     Varilease paid a total of $108,763.65 for the New Assets.

59.     Prior to the Petition Date, Meridian paid Varilease $129,712.00 in rental fees, with such payments exceeding the fair market value of the New Assets.

60.     Thus, Meridian paid for the New Assets in full prior to the Petition Date.

61.     On July 20, 2022, Meridian and Varilease executed a "Master Lease Agreement" providing for Varilease to lease certain equipment (collectively, the "Leased Assets") to Meridian in exchange for rental payments.  A true and complete copy of the Master Lease Agreement is attached hereto as **Exhibit 6**.

62.     The Master Lease Agreement expressly provides that the Leased Assets are more fully described within certain schedules.  *See* Exhibit 6, § 1.

63.     On July 20, 2022, Meridian and Varilease executed a certain "Schedule No. 01" (the "Schedule").  A true and complete copy of the Schedule is attached hereto as **Exhibit 7**.

64.     The Schedule describes the Leased Assets as "assorted digital signboards, A/C units, microwaves and related equipment . . . together with all other equipment and property hereafter purchased . . .(collectively, the "Equipment")". *See* Exhibit 7, at pg. 1.

65.     The Schedule further provides that "[t]he Equipment shall be more fully and completely described in an Installation Certificate, which shall later be executed by [Meridian] in connection with the Schedule. Upon [Meridian]'s execution thereof, this section shall be automatically amended to include all equipment and property described in the Installation Certificate." *See* Exhibit 7, at pg. 1.

66.     As of the Petition Date, Varilease never provided Meridian with any installation certificates to more fully and completely describe the Leased Assets.

67.     Meridian never executed any installation certificates to more fully and completely describe the Leased Assets.

68.     Varilease never executed any installation certificates to more fully and completely describe the Leased Assets.

69.     The Master Lease Agreement further provides that "during the term of the [l]ease . . . [Meridian] grants [Varilease] a security interest in any and all goods, chattels, fixtures, equipment, assets, accounts receivable, contract rights, general intangibles, and property of every kind." *See* Exhibit 6, § 2(b).

70.     The Master Lease Agreement does not contain a grant of a security interest to Varilease from the Operations Plaintiffs.

71.     On June 27, 2022, one Corporation Service Company, as representative to Varilease, filed a UCC-1 financing statement against Meridian in certain assets, which was assigned an initial filing number of 2022882412-0.  On August 16, 2022, this UCC-1 financing statement was assigned to Varilease via UCC Financing Statement Amendment filing number 220817895319-1.

72.     On August 9, 2022, one Corporation Service Company, as representative to Varilease, filed a UCC-1 financing statement against Meridian in certain assets, which was assigned an initial filing number of 2022893404-9.  On May 2, 2023, this UCC-1 financing statement was assigned to Varilease via UCC Financing Statement Amendment filing number 230503957733-3.

73.     Varilease enforced the terms of the Master Lease Agreement to charge Meridian rental fees accruing at a rate of $3,313.97 per day.

74.     The debts from the rental fees accrued each day.

75.     Varilease billed Meridian for the rental fees on a monthly basis.

4893-3597-5038, v. 5

76.     Prior to the Petition Date, Meridian made payments to Varilease in the following

amounts and at the following times:

     a.     $28,024.20 – September 1, 2022;

     b.     $38,214.90 – October 3, 2022;

     c.     $63,472.90 – November 10, 2022;

     d.     $138,947.00 – January 3, 2023; and

     e.     $88,906.30 – January 19, 2023 (collectively, the "Pre-Petition Transfers").

77.     After the Petition Date, Meridian made the following payments to Varilease:

     a.     $100,463.52 – April 20, 2023;

     b.     $103,927.97 – May 26, 2023;

     c.     $107,596.79 – June 14, 2023; and

     d.     $104,126.18 – July 17, 2023 (collectively, the "Post-Petition Transfers").

78.     The Pre-Petition Transfers and the Post-Petition Transfers that Meridian paid

Varilease total $773,679.34.

## FIRST CLAIM FOR RELIEF
**Declaratory Judgment to Determine Varilease Rights to the Operation Plaintiffs
Authorization Assets, or, in the Alternative to Determine Varilease's Rights in the
Operation Plaintiffs Authorization Assets are Subject to the CNB Security Interests
[28 U.S.C. § 2201(a), Fed.R.Civ.P. 57 and Fed.R.Bankr.P. 7001(1), (2) and (9)]**

79.     Plaintiffs repeat and reallege the preceding allegations of this Complaint as though

fully set forth herein.

80.     Title 28, chapter 151 of the United States Code governs declaratory actions:

In a case of actual controversy within its jurisdiction . . . any court of the
United States, upon the filing of an appropriate pleading, may declare the
rights and other legal relations of any interested party seeking such
declaration, whether or not further relief is or could be sought. Any such

declaration shall have the force and effect of a final judgment or decree and
shall be reviewable as such.

28 U.S.C. § 2201.

81.    The Bankruptcy Court further has the right to grant "[f]urther necessary or proper
relief based on a declaratory judgment or decree . . . against any adverse party whose rights have
been determined by such judgment." 28 U.S.C. § 2202.

82.    The Operation Plaintiffs Authorization Assets are owned by the Operating
Plaintiffs.

83.    The Operation Plaintiffs did not transfer actual and/or equitable ownership interest
in the Operation Plaintiffs Authorization Assets to Meridian.

84.    Meridian had and has no actual and/or equitable ownership interest in the Operation
Plaintiffs Authorization Assets.

85.    Operations Plaintiffs did not authorize Meridian to transfer ownership in the
Operation Plaintiffs Authorization Assets to Varilease.

86.    Loveloud did not authorize Meridian to transfer ownership in the Operation
Plaintiffs Authorization Assets to Varilease.

87.    Meridian did not possess authority to transfer ownership in the Operation Plaintiffs
Authorization Assets to Varilease.

88.    Varilease had and has no actual and/or equitable ownership  in the Operation
Plaintiffs Authorization Assets.

89.    Pursuant to 28 U.S.C. § 2201(a), Plaintiffs request a declaratory judgment that the
Operation Plaintiffs Authorization Assets are owned by the Operating Plaintiffs and Varilease has
no ownership interests in the Operation Plaintiffs Authorization Assets.

14

90.     Alternatively, to the extent the ownership interests in the Operation Plaintiffs Authorization Assets were transferred to Varilease, Varilease took ownership of the Operation Plaintiffs Authorization Assets subject toCNB Security Interests.

91.     Prior to the execution of the Authorizations, Operations Plaintiffs granted CNB security interests against all their assets, which included the Operation Plaintiffs Authorization Assets.

92.     The CNB Security Interests were perfected via filing of the CNB Financing Statements.

93.     At the time of Meridian's alleged transfer of the Operations Plaintiffs Authorization Assets to Varilease, the CNB Security Interests were still effective and perfected.

94.     On February 24, 2023, the CNB Financing Statements lapsed and became unperfected.

95.     Despite the subsequent lapse in the CNB Financing Statements, the CNB Security Interests remain superior to any interest Varilease may claim against the Operations Plaintiffs Authorization Assets.

96.     Between February 24, 2023 and the Petition Date, only a "purchaser for value" could obtain aninterest with higher priority than the CNB Security Interests.

97.     Varilease was not a "purchaser for value" within the meaning of U.C.A. § 70A-9a-515(3).

98.     Varilease was on record notice of the CNB Security Interests in the Operations Plaintiffs Authorization Assets at the time the Authorizations were executed.

15

99.    Upon information and belief, Varilease had actual knowledge of the CNB Security Interests against the Operations Plaintiffs Authorization Assets at the time the Authorizations were executed.

100.    Varilease had actual knowledge of the CNB Security Interests in the Operations Plaintiffs Authorization Assets no later than October 13, 2022.

101.    Varilease does not qualify as a "purchaser for value," accordingly any interest Varilease asserts against the Operations Plaintiffs Authorization Assets is subordinate to the CNB Security Interests.

102.    In the alternative, pursuant to 28 U.S.C. § 2201(a), Plaintiffs request a declaratory judgment that to the extent the Operations Plaintiffs transferred their ownership interests in the Operations Plaintiffs Authorization Assets, and any asserted by Varilease in the Operations Plaintiffs Authorization Assets is subordinate to the CNB Security Interests.

## SECOND CLAIM FOR RELIEF
**Avoidance and Preservation of the CNB Security Interests**
**[11 U.S.C. §§ 544(a)(1) and 551]**

103.    Plaintiffs repeat and reallege the preceding allegations of this Complaint as though fully set forth herein.

104.    Section 544(a)(1) of the Bankruptcy Code provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or any avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

  (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract would have obtained such a judicial lien, whether or not such a creditor exists;

11 U.S.C. § 544(a)(1).

4893-3597-5038, v. 5

105.    The CNB Security Interests in all of Operations Plaintiffs' assets, including the Operation Plaintiffs Authorization Assets, were perfected via filing of the CNB Financing Statements on February 23, 2018.

106.    CNB had five (5) years, through and including February 23, 2023, to file a continuation statement to prevent the lapsing of the CNB Financing Statements.

107.    CNB failed to timely file any continuation statements regarding the CNB Financing Statements.

108.    On February 24, 2023, the CNB Financing Statements lapsed and ceased to be effective.

109.    On and after February 24, 2023, the CNB Security Interests were unperfected.

110.    Although the CNB Financing Statements lapsed and were unperfected, the CNB Security Interests were not extinguished.

111.    A debtor-in-possession may exercise § 544(a)(1) to avoid an unperfected security interest in a debtor's personal property.

112.    The Operations Plaintiffs as debtors-in-possession hold the rights of a hypothetical lien creditor on the Petition Date.

113.    The CNB Security Interests are subject to avoidance under § 544(a)(1) of the Bankruptcy Code.

114.    Pursuant to U.C.A. § 70A-9-301(1), a creditor's judicial lien is considered superior to an unperfected security interest in personal property.

115.    Accordingly, the CNB Security Interests are avoidable under § 544(a)(1) of the Bankruptcy Code.

4893-3597-5038, v. 5

116.     Upon the avoidance of the CNB Security Interests under § 544 of the Bankruptcy
Code, such CNB Security Interests are preserved for the benefit of the Operations Plaintiffs' estates
pursuant to § 551 of the Bankruptcy Code.

117.     By reason of the foregoing, the avoided CNB Security Interests against *all of*
Operations Plaintiffs' assets, which exceeds the scope of the Operations Plaintiffs Authorization
Assets, are preserved for the benefit of the Operations Plaintiffs' estates.

118.     By reason of the foregoing, § 544(a)(1) preserves the status quo vis-à-vis priority
relations and Varilease did not defeat the CNB Security Interests before avoidance and
preservation of the CNB Security Interests.

119.     Thus, the CNB Security Interests against *all of* Operations Plaintiffs' assets are
preserved for the benefit of the Operations Plaintiffs' estates and the preserved CNB Security
Interests remain senior to Varilease's security interest.

### THIRD CLAIM FOR RELIEF
**Avoidance of the Preferential Transfer to CNB**
**[11 U.S.C. § 547(b)]**

120.     Plaintiffs repeat and reallege the preceding allegations of this Complaint as though
fully set forth herein.

121.     Within ninety (90) days before the Petition Date, on January 1, 2023, Meridian
made the CNB Pre-Petition Transfer to CNB totaling $223,420.39.

122.     The CNB Pre-Petition Transfer was made in payment under the Credit Agreement
and Forbearance Agreement.

123.     CNB was a creditor, within the meaning of § 101(10)(A) of the Bankruptcy Code,
of Meridian at the time of the CNB Pre-Petition Transfer because Meridian owed a debt to CNB
under the Credit Agreement and Forbearance Agreement.

124.    The CNB Pre-Petition Transfer was made by Meridian and accordingly, the CNB Pre-Petition Transfer constituted a transfer of an interest of Meridian property.

125.    The CNB Pre-Petition Transfer was a transfer to, or for the benefit of, CNB because the CNB Pre-Petition Transfer was issued and payable to CNB.

126.    The CNB Pre-Petition Transfer either reduced or satisfied a debt then owed by the Debtors to CNB at the time of the transfer.

127.    Accordingly, the CNB Pre-Petition Transfer was made for, or on account of, an antecedent debt owing by the Debtors to CNB before such transfer was made.

128.    Before the CNB Pre-Petition Transfer was made, the Debtors had received seventeen different default notices from CNB.

129.    As of the Petition Date, Meridian's Schedules of Assets and Liabilities listed only $28,514,276.72 in assets and $53,465,596.86 in liabilities.

130.    Thus, from the date the CNB Pre-Petition Transfer was made through and continuing to the Petition Date, Meridian's liabilities exceeded its assets at all relevant times and Meridian lacked sufficient assets to satisfy its debts as they came due.

131.    Accordingly, Meridian was insolvent at the time of the CNB Pre-Petition Transfer.

132.    The CNB Pre-Petition Transfer enabled CNB to receive more than it would receive if:

    a.    Meridian's case was a case under chapter 7 of the Bankruptcy Code;

    b.    Such transfer had not been made; and

    c.    CNB received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

133.    By reason of the foregoing, Meridian may avoid the CNB Pre-Petition Transfer as

a preferential transfer pursuant to § 547(b) of the Bankruptcy Code.

## FOURTH CLAIM FOR RELIEF
### Recovery of Avoided Preferential Transfer to CNB
### [11 U.S.C. § 550(a)]

134.     Plaintiffs repeat and reallege the preceding allegations of this Complaint as though fully set forth herein.

135.     The CNB Pre-Petition Transfer is avoidable by Meridian under § 547(b) of the Bankruptcy Code.

136.     CNB received the CNB Pre-Petition Transfer directly from Meridian.

137.     CNB was either: (a) the initial transferee of the CNB Pre-Petition Transfer; (b) the entity for whose benefit the CNB Pre-Petition Transfer was made; or (c) an immediate or mediate transferee of an initial transferee.

138.     Recovery of the CNB Pre-Petition Transfer from CNB would increase the assets of Meridian's bankruptcy estate available for payment of creditors.

139.     Recovery of the CNB Pre-Petition Transfer or the value thereof from CNB or any mediate or immediate transferee is for the benefit of the Meridian estate.

140.     By reason of the foregoing, Meridian may recover the CNB Pre-Petition Transfer or the value thereof from CNB pursuant to § 550 of the Bankruptcy Code.

## FIFTH CLAIM FOR RELIEF
### Avoidance of Preferential Transfers to Varilease
### [11 U.S.C. §§ 547(b)]

141.     Plaintiffs repeat and reallege the preceding allegations of this Complaint as though fully set forth herein.

142.     Prior to the Petition Date, and pursuant to the Master Lease Agreement, Meridian accrued debts on a daily basis for rental fees in connection with its lease of the Leased Assets from Varilease.

143.     Varilease billed Meridian for the rental fees on a monthly basis.

144.     Within ninety (90) days before the Petition Date, Meridian made the following two payments to Varilease totaling $227,853.30: $138,947.00 on January 3, 2023; and $88,906.30 on January 19, 2023 (collectively, the "Varilease Pre-Petition Transfers").

145.     The Varilease Pre-Petition Transfers were made in payment under the Master Lease Agreement on account of Varilease's purported leasing of the Operations Plaintiffs Authorization Assets.

146.     Varilease was a creditor, within the meaning of § 101(10)(A) of the Bankruptcy Code, of Meridian at the time of the Varilease Pre-Petition Transfers because Meridian owed a debt to Varilease under the Master Lease Agreement on account of Varilease's purported leasing of the Operations Plaintiffs Authorization Assets.

147.     The Varilease Pre-Petition Transfers were made by Meridian and accordingly, the Varilease Pre-Petition Transfers constituted transfers of an interest of Meridian property.

148.     The Varilease Pre-Petition Transfers were transfers to, or for the benefit of, Varilease because the Varilease Pre-Petition Transfers were issued and payable to Varilease.

149.     The Varilease Pre-Petition Transfers either reduced or satisfied a debt then owed by Meridian to Varilease at the time of the transfer.

150.     Accordingly, the Varilease Pre-Petition Transfers were made for, or on account of, an antecedent debt owing by Meridian to Varilease before such transfer was made.

151.    As of the Petition Date, Meridian's Schedules of Assets and Liabilities listed only $28,514,276.72 in assets and $53,465,596.86 in liabilities.

152.    Thus, from the date the Varilease Pre-Petition Transfers were made through and continuing to the Petition Date, Meridian's liabilities exceeded its assets at all relevant times and Meridian lacked sufficient assets to satisfy its debts as they came due.

153.    Accordingly, Meridian was insolvent at the time of the Varilease Pre-Petition Transfers.

154.    The Varilease Pre-Petition Transfers enabled Varilease to receive more than it would receive if:

 a.  Meridian's case was a case under chapter 7 of the Bankruptcy Code;

 b.  Such transfer had not been made; and

 c.  Varilease received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

155.    By reason of the foregoing, Meridian may avoid the Varilease Pre-Petition Transfers as preferential transfers pursuant to § 547(b) of the Bankruptcy Code.

156.    The Varilease Pre-Petition Transfers did not relate to rental fees on the New Assets.

157.    Rather, Meridian made the Varilease Pre-Petition Transfers on account of rental fees billed by Varilease for the Operations Plaintiffs Authorization Assets.

158.    In exchange for the Varilease Pre-Petition Transfers, Meridian received no new value.

159.    As a result of the Varilease Pre-Petition Transfers, the amount owed by Meridian to Varilease on account of goods sold and services provided prior to the Petition Date was reduced by no less than $227,853.30.

4893-3597-5038, v. 5

## SIXTH CLAIM FOR RELIEF
### Recovery of Avoided Preferential Transfers to Varilease
### [11 U.S.C. § 550(a)]

160.    Plaintiffs repeat and reallege the preceding allegations of this Complaint as though fully set forth herein.

161.    The Varilease Pre-Petition Transfers are avoidable by Meridian under § 547(b) of the Bankruptcy Code.

162.    Varilease received the Varilease Pre-Petition Transfers directly from Meridian.

163.    Varilease was either: (a) the initial transferee of the Varilease Pre-Petition Transfers; (b) the entity for whose benefit the Varilease Pre-Petition Transfers were made; or (c) an immediate or mediate transferee of an initial transferee.

164.    Recovery of the Varilease Pre-Petition Transfers from Varilease would increase the assets of Meridian's bankruptcy estate available for payment of creditors.

165.    Recovery of the Varilease Pre-Petition Transfers or the value thereof from Varilease or any mediate or immediate transferee is for the benefit of the Meridian estate.

166.    By reason of the foregoing, Meridian may recover the Varilease Pre-Petition Transfers or the value thereof from Varilease pursuant to § 550 of the Bankruptcy Code.

## SEVENTH CLAIM FOR RELIEF
### Avoidance of Post-Petition Transfers to Varilease
### [11 U.S.C. § 549]

167.    Plaintiffs repeat and reallege the preceding allegations of this Complaint as though fully set forth herein.

168.    Each of the Post-Petition Transfers constitutes a transfer within the meaning of §§ 101(54) and 549 of the Bankruptcy Code.

23

169.     Meridian made the Post-Petition Transfers on account of Varilease's purported leasing of the Operations Plaintiffs Authorization Assets for Meridian's benefit.

170.     The Post-Petition Transfers were not made on account of rental fees for the leased New Assets because Meridian had paid for the New Assets in full prior to the Petition Date.

171.     The only basis for the Post-Petition Transfers was Meridian's payment of rental fees billed by Varilease for the Operations Plaintiffs Authorization Assets.

172.     However, Varilease had no ownership interest in the Operations Plaintiffs Authorization Assets.

173.     Rather, the Operations Plaintiffs continued their ownership of the Operations Plaintiffs Authorization Assets.

174.     Therefore, Meridian was making payments to Varilease for the lease of assets that were owned by the Operations Plaintiffs.

175.     Accordingly, the Meridian estate received no benefit on account of the Post-Petition Transfers.

176.     The Post-Petition Transfers were not authorized under the Bankruptcy Code.

177.     The Bankruptcy Court has not entered any order authorizing the Post-Petition Transfers to Varilease.

178.     Therefore, the Post-Petition Transfers are avoidable by Meridian under 11 U.S.C. § 549(a).

## EIGHTH CLAIM FOR RELIEF
### Recovery of Avoided Post-Petition Transfers to Varilease
### [11 U.S.C. § 550(a)]

179.     Plaintiffs repeat and reallege the preceding allegations of this Complaint as though fully set forth herein.

4893-3597-5038, v. 5

180.    The Post-Petition Transfers are avoidable by Meridian under § 549(a) of the Bankruptcy Code.

181.    Varilease received the Post-Petition Transfers directly from Meridian.

182.    Varilease was either: (a) the initial transferee of the Post-Petition Transfers; (b) the entity for whose benefit the Post-Petition Transfers were made; or (c) an immediate or mediate transferee of an initial transferee.

183.    Recovery of the Post-Petition Transfers from Varilease would increase the assets of Meridian's bankruptcy estate available for payment of creditors.

184.    Recovery of Post-Petition Transfers or the value thereof from Varilease or any mediate or immediate transferee is for the benefit of the Meridian estate.

185.    By reason of the foregoing, Meridian may recover the Post-Petition Transfers or the value thereof from Varilease pursuant to § 550 of the Bankruptcy Code.

186.    Varilease was either: (a) the initial transferee of the Post-Petition Transfers; (b) the entity for whose benefit the Post-Petition Transfers were made; or (c) an immediate or mediate transferee of an initial transferee.

187.    Upon the avoidance of the Post-Petition Transfers under § 549 of the Bankruptcy Code, Meridian may recover the Post-Petition Transfers or the value thereof from Varilease or any mediate or immediate transferee pursuant to § 550 of the Bankruptcy Code.

188.    By reason of the foregoing, Meridian may recover the Post-Petition Transfers or the value thereof from Varilease pursuant to § 550 of the Bankruptcy Code.

**NINTH CLAIM FOR RELIEF**
**Disallowance of Varilease Claim**
**[11 U.S.C. § 502(d)]**

25

189.     Plaintiffs repeat and reallege the preceding allegations of this Complaint as though

fully set forth herein.

190.     Section 502(d) of the Bankruptcy Code states:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any
claim of any entity from which property is recoverable under section 542, 543, 550,
or 553 of this title or that is a transferee of a transfer avoidable under section 522(f),
522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or
transferee has paid the amount, or turned over any such property, for which such
entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

191.     On July 10, 2023, Varilease filed Varilease's Claim against Meridian at Proof of

Claim No. 106-1 in Meridian's bankruptcy case in the amount of $195,406.51.

192.     The Varilease Pre-Petition Transfers and Post-Petition Transfers (collectively, the

"Varilease Transfers") are avoidable by Meridian under §§ 547(b) and 549(a) of the Bankruptcy

Code, respectively.

193.     Varilease is the transferee of the Transfers avoidable under §§ 547(b) and 549(a)

of the Bankruptcy Code.

194.     The Transfers are recoverable from Varilease by Meridian under § 550(a) of the

Bankruptcy Code.

195.     Varilease is liable to Meridian for the amount of the Transfers.

196.     Varilease has not paid the amount of the Transfers to Maridian, or turned over any

such property, for which Varilease is liable under § 550(a) of the Bankruptcy Code.

197.     The Court must disallow the Varilease's Claim under § 502(d) of the Bankruptcy

Code until such time as Varilease pays to Meridian an amount equal to the aggregate amount of

4893-3597-5038, v. 5

the Transfers, plus costs and pre-judgment and post-judgment interest to the extent allowed by

law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request entry of a final judgment of this Bankruptcy

Court awarding the following relief:

(i)     Enter declaratory judgment on the First Claim for Relief pursuant to 28 U.S.C. §

2201(a) in favor of Plaintiffs and against Varilease on the First Claim for Relief

that the Operation Plaintiffs Authorization Assets are owned by the Operating

Plaintiffs and Varilease has no ownership interests in the Operation Plaintiffs

Authorization Assets; or in the alternative, pursuant to 28 U.S.C. § 2201(a), that to

the extent the Operating Plaintiffs transferred their ownership interests in the

Operation Plaintiffs Authorization Assets to Meridian, any interest asserted by

Varilease is subordinate to the CNB Security Interests;

(ii)    Enter judgment in favor of Operating Plaintiffs and against CNB and Varilease on

the Second Claim for Relief for avoidance of the CNB Security Interests under 11

U.S.C. § 544(a) and preserving the CNB Security Interests in the Operations

Plaintiffs' assets for the benefit of the Operating Plaintiffs' estates under 11 U.S.C.

§ 551;

(iii)   Enter judgment in favor of Meridian and against CNB on the Third Claim for Relief

for avoidance of the CNB Preferential Transfer under 11 U.S.C. § 547(b);

(iv)    Enter judgment in favor of Meridian and against CNB on the Fourth Claim for

Relief for recovery of the CNB Preferential Transfer under 11 U.S.C. § 550(a) in

the full amount of the CNB Preferential Transfer, plus costs and pre-judgment and

post-judgment interest to the extent allowed by law;

(v)     Enter judgment in favor of Meridian and against Varilease on the Fifth Claim for

Relief for avoidance of the Varilease Pre-Petition Transfers under 11 U.S.C. §

547(b);

(vi)    Enter judgment in favor of Meridian and against Varilease on the Sixth Claim for

Relief for recovery of the Varilease Pre-Petition Transfers pursuant to 11 U.S.C. §

550(a) in the full amount of the Varilease Pre-Petition Transfers, plus costs and pre-

judgment and post-judgment interest to the extent allowed by law;

(vii)   Enter judgment in favor of Meridian and against Varilease on the Seventh Claim

for Relief for avoidance of the Post-Petition Transfers under 11 U.S.C. § 549(b);

(viii)   Enter judgment in favor of Meridian and against Varilease on the Seventh Claim

for Relief for recovery of the Post-Petition Transfers pursuant to 11 U.S.C. § 550(a)

in the full amount of the Post-Petition Transfers, plus costs and pre-judgment and

post-judgment interest to the extent allowed by law;

(ix)    Enter judgment in favor of Meridian and against Varilease on the Ninth Claim for

Relief disallowing the Varilease's Claim under 11 U.S.C. § 502(d) until such time

as Varilease pays to Meridian an amount equal to the aggregate amount of the

Varilease Pre-Petition Transfers and the Post-Petition Transfers, for which

Varilease is liable under 11 U.S.C. § 550(a) or 11 U.S.C. § 553(b), plus costs and

pre-judgment and post-judgment interest to the extent allowed by law; and

(x)     Enter such other and further relief, in law and equity, to which Plaintiffs may be

justly entitled.

4893-3597-5038, v. 5

DATED: September 15, 2023                          Respectfully submitted,

MARKUS WILLIAMS YOUNG &
HUNSICKER LLC

By: */s/ James T. Markus*

James T. Markus *(pro hac vice)*
Matthew T. Faga *(pro hac vice)*
Jennifer Salisbury *(pro hac vice to be pending)*
Lacey Bryan (*pro hac vice*)
**MARKUS WILLIAMS YOUNG &**
**HUNSICKER LLC**
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: jmarkus@markuswilliams.com
Email: mfaga@markuswilliams.com
Email: jsalisbury@markuswilliams.com
Email: lbryan@markuswilliams.com

*Counsel for the Debtors-In-Possession*

4893-3597-5038, v. 5