# SECURITY AGREEMENT

As of February 26, 2018, in consideration of the execution and delivery of that certain Credit Agreement of even date herewith (as amended, extended, supplemented, amended and restated or otherwise modified from time to time, the "Credit Agreement") by and among NKS RESTAURANTS, L.C., a Utah limited liability company ("NKS"), HR RESTAURANTS, L.C., a Utah limited liability company ("HR"), MR RESTAURANTS, L.C., a Utah limited liability company ("MR"), C UTAH, L.C., a Utah limited liability company ("C Utah"), AZM RESTAURANTS, L.C., a Utah limited liability company ("AZM"), NDM RESTAURANTS, L.C., a Utah limited liability company ("NDM"; NKS, HR, MR, C Utah, AZM, and NDM are sometimes individually referred to herein as a "Borrower" and collectively as the "Borrowers"; the Borrowers together with Loveloud Restaurants, L.C., a Utah limited liability company, any other Person that from time to time may become a party to this Security Agreement (as amended, supplemented, amended and restated or otherwise modified from time to time, this "Agreement"), collectively, the "Debtors"), the other Loan Parties party thereto, the Lenders party thereto from time to time, and **CITY NATIONAL BANK**, as Administrative Agent for the benefit of the Secured Parties (as defined in the Credit Agreement), pursuant to which the Lenders have agreed, severally and not jointly, to make Loans (as defined in the Credit Agreement) to the Borrowers, the Debtors hereby unconditionally grant and assign to secure the prompt payment and performance in full when due, whether at stated maturity, by acceleration, by mandatory prepayment or otherwise, of the Obligations (as defined below) to the Administrative Agent, for itself and for the ratable benefit of the Secured Parties, a continuing security interest and lien in and to (hereinafter referred to as the "Security Interest") all of the Debtors' following described property and assets of whatever type or description, and all additions thereto and replacements thereof, and all other property whether now owned or hereafter created, acquired or reacquired by the Debtors:

Inventory

All inventory and supplies of whatsoever nature and kind (including, without limitation, (i) all food and paper inventory, supplies and all other raw materials, components, work in process, finished goods, goods in transit and packing and shipping materials, and (ii) all goods that are returned to or repossessed by any Debtor), together with all additions and accessions thereto, replacements therefor, products thereof and documents therefor (collectively, the "Inventory");

Accounts

All accounts (including healthcare insurance receivables), deposit accounts, letter of credit rights (whether or not the letter of credit is evidenced by a writing) and other rights to payment of money for goods and real property sold or leased or for services rendered, expressly including, without limitation, the provision of services, whether or not earned by performance, including, without limitation, all agreements with and sums due from customers and other Persons (as defined in the Credit Agreement), and all books and records recording, evidencing or relating to such rights or any part thereof (collectively, the "Accounts");

**EXHIBIT 2**

Equipment

All machinery, equipment and supplies not included in Inventory above (including, without limitation, food storage and preparation equipment, registers, communications equipment, and replacements therefor), together with all additions and accessions thereto (collectively, the "Equipment");

Licenses

All franchises, licenses, permits and operating rights granted to or held by any Debtor, including, without limitation, the Franchise Agreements, including any renewals or extensions of such Franchise Agreements (collectively, the "Licenses");

Contracts and Leases

All (a) (i) contracts and agreements for the purchase of real and personal property, easements and rights of way, (ii) customer, management, franchise and supplier contracts and agreements, (iii) Material Contracts and any rights thereunder, including the right to receive payments, (iv) security agreements, guarantees and other agreements evidencing, securing or otherwise relating to the Accounts or other rights to receive payment, (v) hedge agreements, and (vi) other agreements to which any Debtor is a party, whether now existing or hereafter arising (collectively, the "Contracts"); (b) lease agreements for real or personal property to which any Debtor is a party, whether now existing or hereafter arising (collectively, the "Leases"); and (c) all other contracts and contractual rights, indemnification rights, and other remedies or provisions now existing or hereafter arising in favor of any Debtor (collectively, the "Other Contracts");

General Intangibles

All general intangibles including personal property not included above, including, without limitation, (i) customer and supplier lists, books and records, computer programs and other intellectual property rights, insurance policies, tax refunds, (ii) all goodwill, trademarks, trademark applications, trade names, trade secrets, patents, copyrights, formulas, industrial designs, software, other intellectual property or rights therein, whether under license or otherwise, all rights to receive payment on property upon or in connection with any transfer of any License, and (iii) all payment intangibles (collectively, the "Intangibles");

Furniture and Fixtures

All furniture and fixtures (including all tables, seating, signage, decorations and other furniture and fixtures), together with all additions and accessions thereto and replacements therefor (collectively, the "Furniture and Fixtures");

Miscellaneous Items

All goods, chattel paper (whether tangible or electronic), documents, instruments (including promissory notes), supplies, choses in action, commercial tort claims, (including, without limitation, payments received with respect to termination, arbitration or litigation under

EXHIBIT 2

any Contract), money, deposits, certificates of deposit, stock or share certificates, certificated and uncertificated securities and all other investment property, supporting obligations, URL's, domain names and licenses, all books and records relating to the foregoing and all other property and assets of whatever type or description not included above (collectively, the "Miscellaneous Items");

Cash

All cash, money, cash equivalents, certificates of deposit or other assets of each Debtor that now or hereafter come into the possession, custody, or control of any Lender or the Administrative Agent (collectively, "Cash"); and

Proceeds

All proceeds of any of the above, and all proceeds of any loss of, damage to or destruction of the above, whether insured or not insured, and all other proceeds of any sale, lease or other disposition of any property or interest therein referred to above, together with all proceeds of any policies of insurance covering any or all of the above, the proceeds of any award in condemnation with respect to any of the property, any rebates or refunds, whether for taxes or otherwise, and together with all proceeds of any such proceeds (collectively, the "Proceeds").

The Inventory, Accounts, Equipment, Licenses, Contracts, Leases, Other Contracts, Intangibles, Furniture and Fixtures, Miscellaneous Items, Cash, and Proceeds, as described above, are hereinafter collectively referred to as the "Collateral." Notwithstanding the foregoing, the term "Collateral" shall not include any rights or interest in any capital stock, membership interests, partnership interests or any other equity interests in Specified Subsidiaries or any contract, lease, franchise agreement, permit, license, or license agreement covering real or personal property of any Debtor if under the terms of such contract, lease, franchise agreement, permit, license, or license agreement, or applicable law with respect thereto, the grant of a security interest or lien therein is prohibited as a matter of law or under the terms of such contract, lease, franchise agreement, permit, license, or license agreement and such prohibition or restriction has not been waived or the consent of the other party to such contract, lease, franchise agreement, permit, license, or license agreement has not been obtained (provided, that, (A) the foregoing exclusions shall in no way be construed (1) to apply to the extent that any described prohibition or restriction is unenforceable under Section 9-406, 9-407, 9-408, or 9-409 of the Uniform Commercial Code or other applicable law, or (2) to apply to the extent that any consent or waiver has been obtained that would permit Administrative Agent's security interest or lien notwithstanding the prohibition or restriction on the pledge of such contract, lease, franchise agreement, permit, license, or license agreement and (B) the foregoing exclusions shall in no way be construed to limit, impair, or otherwise affect any of Administrative Agent's continuing security interests in and liens upon any rights or interests of any Debtor in or to (1) monies due or to become due under or in connection with any described contract, lease, franchise agreement, permit, license, license agreement, or (2) any proceeds from the sale, license, lease or other dispositions of any such contract, lease, franchise agreement, permit, license, license agreement).

This Agreement and the Security Interest secure payment and performance of all

EXHIBIT 2

obligations of the Debtors to the Secured Parties, or any of them, under this Agreement (including, without limitation, the "Liabilities" hereinafter defined), the Credit Agreement, every other Loan Document, the Related Swap Contracts and Bank Product Agreements (as such terms are defined in the Credit Agreement), and any extensions, renewals or amendments thereto, however created, acquired, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing, or due or to become due, together with all other now existing or hereafter arising Obligations, as such term is defined in the Credit Agreement (all of the foregoing obligations being hereinafter collectively referred to as the "Obligations"); provided, that Obligations of any Loan Party shall not include any Excluded Swap Obligations solely of such Loan Party.

1.    <u>Defined Terms</u>

(a)    Capitalized terms used herein shall have the meanings ascribed to such terms in the Credit Agreement to the extent not otherwise defined or limited herein.  To the extent not inconsistent with this Agreement, the rules of construction and interpretation set forth in Article I of the Credit Agreement shall also be applicable to this Agreement and are incorporated herein by this reference.

(b)    "Uniform Commercial Code" means the Uniform Commercial Code as in effect in the State of California and as required to enforce this Agreement, any other applicable jurisdiction in which the Collateral is located.

(c)    All terms used to define or describe types of Collateral and rights therein shall have the meanings set forth in the Uniform Commercial Code to the extent not inconsistent with this Agreement.

(d)    The words "hereof," "herein" and "hereunder" and words of like import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and paragraph references are to this Agreement unless otherwise specified.

(e)    No reference to "proceeds" herein shall be deemed to authorize any sale, transfer or other disposition of any Collateral.

2.    <u>Uniform Commercial Code Financing Statements</u>.    Each Debtor hereby irrevocably authorizes the Administrative Agent to file such financing statements, continuation statements, amendments to such financing statements and such other documents as the Administrative Agent may deem necessary or desirable to protect or perfect the interest of the Administrative Agent in the Collateral, including to file in any filing office in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto that indicate the Collateral (i) as all assets and/or personal property of the Debtors or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of such jurisdiction, or (ii) as being of an equal or lesser scope or with greater detail, and provide any other information required by part 5 of Article 9 of the Uniform Commercial Code of such jurisdiction for the sufficiency or filing office acceptance of any financing statement or amendment thereto.  In addition, each Debtor agrees to

EXHIBIT 2

make, execute, furnish, deliver or cause to be done, furnished, executed and delivered all such further acts, information, documents and things as the Administrative Agent may require for the purpose of perfecting or protecting the rights of the Administrative Agent hereunder or otherwise giving effect to this Agreement, all promptly upon request therefor.

3. <u>Related Swap Contracts and Bank Products Agreements</u>. All obligations of any Debtor under any Related Swap Contracts or any Bank Products Agreements to which any Lender or its Affiliates are a party shall be deemed to be liabilities of such Debtor ("<u>Liabilities</u>"), and each Lender or Affiliate of a Lender party to any such Related Swap Contract or Bank Products Agreement shall be deemed to be a Secured Party hereunder with respect to such Liabilities; provided, however, that such obligations shall cease to be Liabilities at such time, prior to the Facility Termination Date (as defined below), as such Person (or Affiliate of such Person) shall cease to be a "Lender" under the Credit Agreement.

No Person who obtains the benefit of this Agreement by virtue of the provisions of this Section shall have, prior to the Facility Termination Date, any right to notice of any action or to consent to, direct or object to any action hereunder or under any other Loan Document or otherwise in respect of the Obligations (including the release or modification of any Obligations or security therefor) other than in its capacity as a Lender and only to the extent expressly provided in the Loan Documents. Each Secured Party not a party to the Credit Agreement who obtains the benefit of this Agreement by virtue of the provisions of this Section shall be deemed to have acknowledged and accepted the appointment of the Administrative Agent pursuant to the terms of the Credit Agreement, and that with respect to the actions and omissions of the Administrative Agent hereunder or otherwise relating hereto that do or may affect such Secured Party, the Administrative Agent and each of its Related Parties shall be entitled to all the rights, benefits and immunities conferred under <u>Article IX</u> of the Credit Agreement.

"<u>Facility Termination Date</u>" means the date as of which all of the following shall have occurred: (a) the Debtors shall have permanently terminated the credit facilities under the Loan Documents by final payment in full of all Outstanding Amounts, together with all accrued and unpaid interest and fees thereon; (b) all Commitments shall have terminated or expired; (c) the obligations and liabilities of the Debtors and each other Loan Party under all Related Swap Contracts and Bank Products Agreements shall have been fully, finally and irrevocably paid and satisfied in full and the Related Swap Contracts and Bank Products Agreements shall have expired or been terminated, or other arrangements satisfactory to the counterparties shall have been made with respect thereto; and (d) the Debtors and each other Loan Party shall have fully, finally and irrevocably paid and satisfied in full all of their respective obligations and liabilities arising under the Loan Documents, including the Obligations (except for future Obligations consisting of continuing indemnities and other contingent Obligations of the Debtors or any Loan Party that may be owing to the Administrative Agent, any of its Related Parties or any Lender pursuant to the Loan Documents and expressly survive termination of the Credit Agreement or any other Loan Document).

4. <u>Representations and Warranties</u>. Each Debtor, jointly and severally, represents and warrants to the Lenders and the Administrative Agent that Debtors are the owners of the

EXHIBIT 2

Collateral, free from any right or claim of any Person or any Lien, except for the Security Interest created by this Agreement and Permitted Liens.

5. <u>Administrative Agent's Perfected First Priority Security Interest</u>. Each Debtor further, jointly and severally, represents and warrants that, upon the filing of Uniform Commercial Code financing statements in the jurisdictions set forth on **Schedule 1** attached hereto, the Security Interest in the Collateral granted hereunder constitutes and, assuming timely filing of continuation statements, shall constitute at all times a valid first priority perfected security interest (except for Permitted Liens), with respect to all Collateral for which the filing of Uniform Commercial Code financing statements is a valid method of perfection. Each Debtor shall take or cause to be taken such acts and actions as shall be necessary or appropriate to assure that the Security Interest in the Collateral shall not become subordinate or junior to the security interests, Liens or claims of any other Person, and that the Collateral shall not otherwise be or become subject to any Lien, except for Permitted Liens.

6. <u>Location of Collateral and Records</u>. Each Debtor further, jointly and severally, represents and warrants that it now keeps all records concerning the Accounts, Contracts, Leases, Other Contracts, Intangibles and other Collateral at the chief executive office of such Debtor which is at the address designated as such on **Schedule 2** attached hereto. Each Debtor covenants and agrees that: (a) without providing at least thirty (30) days prior written notice to the Administrative Agent, such Debtor will not keep any of such records at any other address or change its name, entity type, state of incorporation, chief executive office, places of business, mailing address, or organizational identification number. Each Debtor shall advise the Administrative Agent, in writing at least thirty (30) days in advance of the opening of any new place of business, the closing of any existing place of business or any change in the location of the place where it keeps any of the Collateral. Each Debtor represents and warrants that all addresses at which it operates and owns the Collateral as of the date of this Agreement are listed on **Schedule 2**.

7. <u>Perfection</u>.

(a) Each Debtor shall at any time, and from time to time, take such steps as the Administrative Agent may reasonably request for the Administrative Agent (1) to obtain an acknowledgment, in form and substance satisfactory to the Administrative Agent, of any bailee having possession of any of the Collateral that the bailee holds such Collateral for the Administrative Agent and that the bailee agrees to comply, without consent or notice to the Debtors with the Administrative Agent's instructions, (2) to obtain "control" of any investment property, deposit accounts, letter of credit rights or electronic chattel paper in accordance with Article 9 of the Uniform Commercial Code, with any agreements establishing control, to be in form and substance satisfactory to the Administrative Agent, and (3) otherwise to insure the continued perfection and priority of the Administrative Agent's Security Interest in any of the Collateral and of the preservation of its rights therein. In furtherance of the foregoing, Debtors shall promptly notify the Administrative Agent in writing if any Debtor acquires any property or interest which constitutes Collateral, including without limitation any commercial tort claims, any promissory notes or any of the Collateral described in clause (2) above, or if any Collateral is at any time in the possession of a bailee, and shall endorse, assign and deliver to the Administrative Agent or cause the Administrative Agent to be the registered holder of, any

EXHIBIT 2

securities, financial assets or other investment property now owned or hereafter acquired by any Debtor. Each Debtor agrees that it shall not maintain any deposit accounts outside of City National Bank (other than accounts exclusively used for payroll, payroll taxes or other employee wage and benefit payments) unless such Debtor delivers a control agreement to the Administrative Agent in form and substance satisfactory to the Administrative Agent.

(b)     Other Acts as to Any and All Collateral. Each Debtor agrees to comply with the covenants and agreements set forth in the Credit Agreement, including such covenants as pertain to the Collateral. In addition, each Debtor agrees, at the request and option of the Administrative Agent, to take any and all other actions the Administrative Agent may determine to be necessary or useful for the attachment, perfection and first priority of, and the ability of the Administrative Agent to enforce, the Administrative Agent's Security Interest in any and all of the Collateral including, without limitation, (i) executing, delivering and, where appropriate, filing financing statements and amendments relating thereto under the Uniform Commercial Code, to the extent, if any, that such Debtor's signature thereon is required therefor, (ii) causing the Administrative Agent's name to be noted as secured party on any certificate of title for a titled good if such notation is a condition to attachment, perfection or priority of, or ability of the Administrative Agent to enforce, the Administrative Agent's Security Interest in such Collateral, (iii) complying with any provision of any statute, regulation or treaty of the United States as to any Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of the Administrative Agent to enforce, the Administrative Agent's Security Interest in such Collateral, (iv) obtaining governmental and, subject to the provisions of the Credit Agreement, other third party waivers, consents and approvals in form and substance satisfactory to Administrative Agent, including, without limitation, any consent of any licensor, lessor or other Person obligated on Collateral, and (v) subject to the provisions of the Credit Agreement, obtaining waivers from mortgagees and landlords in form and substance satisfactory to the Administrative Agent.

(c)     Savings Clause. Nothing contained in this Section 7 shall be construed to narrow the scope of the Administrative Agent's or a Secured Party's security interest in any of the Collateral or the perfection or priority thereof or to impair or otherwise limit any of the rights, powers, privileges or remedies of the Administrative Agent or any other Secured Party hereunder.

8.     Personal Property. The parties intend that, to the extent permitted by applicable law, the Collateral shall remain personal property irrespective of the manner of its attachment or affixation to realty.

9.     Risk of Loss. Any and all injury to, or loss or destruction of, the Collateral shall be at the Debtors' risk and shall not release any Debtor from the Obligations.

10.     Insurance. Each Debtor agrees to maintain insurance with financially sound and reputable insurers with respect to the Collateral and their businesses against such casualties and contingencies as required by the Credit Agreement and this Agreement.

11.     Event of Default. Upon the occurrence and during the continuation of an Event of Default, the Administrative Agent shall have, without any other notice or demand upon the

EXHIBIT 2

Debtor, (a) such rights and remedies as are set forth in the Credit Agreement and herein, (b) all the rights, powers and privileges of a secured party under the Uniform Commercial Code, (c) the right to obtain access to any Debtor's books and records, data processing equipment, computer hardware and software relating to the Collateral and use all of the foregoing and the information contained therein in any manner as Administrative Agent deems appropriate in furtherance of its rights under this Agreement and the other Loan Documents, and (d) all other rights and remedies available to the Administrative Agent at law or in equity.  Each Debtor covenants and agrees that any notification of intended disposition of any Collateral, if such notice is required by law, shall be deemed reasonably and properly given if given in the manner provided for below at least ten (10) calendar days (unless the Collateral is perishable or threatens to decline speedily in value or is of a type sold on a recognized market) prior to such disposition.  Upon the occurrence and during the continuation of an Event of Default, the Administrative Agent shall have the right to the appointment of a receiver for the properties and assets of any Debtor, and each Debtor hereby consents to such appointment and except as prohibited by law, hereby waives any objection it may have thereto and the right to have a bond or other security posted by the Administrative Agent or any other Person in connection therewith.  Each Debtor agrees, after the occurrence and during the continuation of an Event of Default, promptly to take any actions at such Debtor's sole cost and expense that the Administrative Agent may request in order to enable the Administrative Agent to obtain and enjoy the full rights and benefits granted to the Administrative Agent under this Agreement and the other Loan Documents.  The Administrative Agent shall have the right, in connection with the issuance of any order for relief in a bankruptcy proceeding, to petition the bankruptcy court for the transfer of control or assignment of the Collateral to a receiver, trustee, transferee, or similar official or to any purchaser of the Collateral pursuant to any public or private sale, foreclosure or other exercise of remedies available to the Administrative Agent, all as permitted by applicable law.  All amounts realized or collected through the exercise of remedies hereunder shall be applied as provided in the Credit Agreement.

       12.    <u>Attorney in Fact</u>.  Each Debtor hereby further irrevocably constitutes and appoints the Administrative Agent as its attorney-in-fact, with power of substitution, with authority, upon the occurrence and during the continuation of an Event of Default, to:  (a) collect all Accounts, endorse its name on any note, acceptance, check, draft, money order or other evidence of debt or of payment which constitutes a portion of the Collateral and which may come into the possession of the Administrative Agent; (b) take such action, execute such documents, and perform such work, as the Administrative Agent may deem appropriate in exercise of the rights and remedies granted the Administrative Agent herein or in any other Loan Document; (c) compromise and settle or to sell, assign or transfer or to ask, collect, receive or issue any and all claims possessed by such Debtor which constitute a portion of the Collateral, all in the name of such Debtor; and (d) generally to do such other things and acts in the name of such Debtor with respect to the Collateral as are necessary or appropriate to protect or enforce the rights of the Administrative Agent hereunder or under any other Loan Document.  The powers of attorney granted herein are coupled with an interest and shall be irrevocable.  To the extent permitted by law, each Debtor hereby ratifies all that said attorney-in-fact shall lawfully do or cause to be done.  The powers conferred on the Administrative Agent hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such powers.  The Administrative Agent shall be accountable only for the amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or agents shall be responsible to any Debtor for any act or failure to act, except for the

EXHIBIT 2

Administrative Agent's own willful misconduct, as determined by a final, non-appealable order of a court having jurisdiction over the subject matter.  To the extent that the Administrative Agent shall incur any costs or pay any expenses in connection with its rights hereunder, including any costs or expenses of litigation associated therewith, such costs, expenses or payments shall be included in the Obligations secured hereby and shall bear interest from the payment of such costs or expenses at the Default Rate.

13.   Remedies Cumulative.  Each Debtor agrees that the rights of the Administrative Agent, the Secured Parties, or any of them, under this Agreement, the Credit Agreement, any other Loan Document or any other contract or agreement now or hereafter in existence between the Administrative Agent and such Debtor and the other obligors thereunder, or any of them, shall be cumulative, and that the Administrative Agent may from time to time exercise such rights and such remedies as such Person or Persons may have thereunder and under the laws of the United States or any state, as applicable, in the manner and at the time that the Person or Persons in its or their sole discretion desire, subject to the terms of such agreements.  Each Debtor further expressly agrees that the Administrative Agent shall in no event be under any obligation to resort to any Collateral secured hereby prior to exercising any other rights that the Administrative Agent, the Secured Parties, or any of them, may have against such Debtor or its property, nor shall the Administrative Agent be required to resort to any other collateral or security for the Obligations, prior to any exercise of the Administrative Agent's rights against such Debtor and its property hereunder.

14.   Administrative Agent's Right to Immediate Possession and Disposition of Collateral.  Each Debtor hereby acknowledges that the Obligations arose out of a commercial transaction and agrees that if an Event of Default shall be continuing, the Administrative Agent shall have the right to immediate possession without notice or a hearing, and, to the extent permitted by law, hereby knowingly and intelligently waive any and all rights they may have to any notice and posting of a bond by the Administrative Agent, the other Secured Parties, or any of them, prior to seizure by the Administrative Agent, or any of its transferees, assigns or successors in interest, of the Collateral or any portion thereof.  Immediately upon the occurrence of an Event of Default and thereafter from time to time during the continuance thereof, the Administrative Agent may, so far as Debtors can give authority therefor, enter upon any premises on which the Collateral may be situated and render the Collateral useable or saleable and/or remove the Collateral or any part thereof in order to effectively liquidate the Collateral. The Administrative Agent's sole duty with respect to the custody, safe keeping and physical preservation of the Collateral in its possession, shall be to deal with such Collateral in substantially the same manner as the Administrative Agent deals with similar property for its own account. Immediately upon the occurrence of an Event of Default and thereafter from time to time during the continuance thereof, the Administrative Agent may in its discretion (a) require each Debtor to assemble all or any part of the Collateral at such location or locations within the jurisdiction(s) of such Debtor's chief executive office(s) or at such other locations as the Administrative Agent may reasonably designate, in which event Debtors shall at their own expense (i) forthwith cause the same to be moved to the place or places so designated by Administrative Agent, (ii) store and keep any Collateral so delivered to Administrative Agent at such place or places pending further action by Administrative Agent, and (iii) while Collateral shall be so stored and kept, provide such security and maintenance services as shall be necessary to protect the same and to preserve and maintain the Collateral in good condition; and (b)

EXHIBIT 2

without notice, except as specified above, sell, lease, license or otherwise dispose of the Collateral or any part thereof by one or more contracts, in one or more parcels at public or private sale, and without the necessity of gathering at the place of sale of the property to be sold, at any of Administrative Agent's offices or elsewhere, at such time or times, for cash, on credit or for future delivery, and at such price or prices and upon such other terms as Administrative Agent may deem commercially reasonable.  In addition, each Debtor waives any and all rights that they may have to a judicial hearing in advance of the enforcement of any of the Administrative Agent's rights and remedies hereunder.

15.    <u>Marshalling</u>.  The Administrative Agent shall not be required to marshal any present or future collateral security (including but not limited to the Collateral) for, or other assurances of payment of, the Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and each Debtor hereby irrevocably waives the benefits of all such laws in connection with the enforcement of this Agreement and the other Loan Documents.

16.    <u>No Release or Waiver</u>.  No transfer or renewal, extension, assignment or termination of this Agreement or of the Credit Agreement or of any other Loan Document, or additional Borrowings or Loans made by the Administrative Agent to any Debtor, or the taking of further security, nor the retaking or re-delivery of the Collateral by the Administrative Agent, or any other act of the Administrative Agent, shall release such Debtor from, or waive any Obligation, except a release or waiver executed in writing by the Administrative Agent in accordance with the Credit Agreement with respect to such Obligation or until the Facility Termination Date.

17.    <u>Assignment</u>.  Each Debtor agrees that this Agreement and the rights hereunder may, in the discretion of the Administrative Agent, be assigned in whole or in part in connection with any assignment of the Credit Agreement or the Obligations evidenced thereby.  In the event this Agreement or the rights hereunder are so assigned by any of the Secured Parties or the Administrative Agent, the terms "Lenders," "Secured Parties" or "Administrative Agent," wherever used herein, shall be deemed, as applicable, to refer to and include any such assignee. No Debtor shall assign its rights in this Agreement or any of its obligations under this Agreement.

18.    <u>Joint and Several Liability</u>.  The undersigned Debtors are jointly and severally liable for all obligations, covenants and agreements herein.  Suit may be brought against the Debtors, jointly and severally, and against any one or more of them, or less than all of them, without impairing the rights of the Administrative Agent and Secured Parties, or its successors or assigns, against the other of the undersigned; and the Administrative Agent and Secured Parties may agree with any one of the undersigned that such party shall be liable for such sum or sums as the Secured Party may see fit and may release any such party from all further liability to the Administrative Agent and Secured Parties for any obligations herein without impairing the right of the Administrative Agent and Secured Parties to demand and collect the balance of such obligations from the other Debtors not so released.  Any reference to the "Debtors" or a "Debtor" herein shall mean, unless the context requires otherwise, any one of the Debtors or any combination of Debtors.

EXHIBIT 2

19.     <u>Successors</u>.  This Agreement shall apply to and bind the respective successors and permitted assigns of each Debtor and inure to the benefit of the Secured Parties and the successors and permitted assigns of the Secured Parties.

20.     <u>Notices</u>.  All notices and other communications required or permitted hereunder shall be in writing and shall be given in a fashion prescribed in the Credit Agreement.

21.     <u>General Terms and Conditions</u>.  In addition to and without limitation of any of the foregoing, this Agreement shall be deemed to be a Loan Document and shall otherwise be subject to all of the general terms and conditions contained in <u>Section 11</u> of the Credit Agreement, *mutatis mutandi*.

22.     <u>Entire Agreement</u>.  This Agreement, together with the Credit Agreement and all other Loan Documents and all documents and agreements referred to herein and therein, constitute the entire agreement among the Debtors, the Lenders and the Administrative Agent with respect to the matters addressed herein and may not be modified except by a writing executed by the Administrative Agent and delivered to the Debtors.

23.     <u>Severability</u>.  If any paragraph or part thereof of this Agreement shall for any reason be held or adjudged to be invalid, illegal or unenforceable by any court of competent jurisdiction, such paragraph or part thereof so adjudicated invalid, illegal or unenforceable shall be deemed separate, distinct and independent, and the remainder of this Agreement shall remain in full force and effect and shall not be affected by such holding or adjudication.

24.     <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all such separate counterparts shall together constitute but one and the same instrument.

25.     <u>Administrative Agent</u>.  Each reference herein to any right granted to, benefit conferred upon or power exercisable by the "Administrative Agent" shall be a reference to the Administrative Agent for the Secured Parties, and each action taken or right exercised hereunder shall be deemed to have been so taken or exercised by the Administrative Agent for the benefit of and on behalf of the Secured Parties.

(Signatures begin on the following page.)

EXHIBIT 2

IN WITNESS WHEREOF, the undersigned parties hereunto have executed this Agreement by and through their duly authorized officers, as of the day and year first above written.

**DEBTORS:**

**NKS RESTAURANTS, L.C.,**
a Utah limited liability company

By: _____
Name: David Harper
Title: Manager

**HR RESTAURANTS, L.C.,**
a Utah limited liability company

By: _____
Name: David Harper
Title: Manager

**MR RESTAURANTS, L.C.,**
a Utah limited liability company

By: _____
Name: David Harper
Title: Manager

**C UTAH, L.C.,**
a Utah limited liability company

By: _____
Name: David Harper
Title: Manager

**AZM RESTAURANTS, L.C.,**
a Utah limited liability company

By: _____
Name: David Harper
Title: Manager

[Signature Page to Security Agreement]

EXHIBIT 2

**NDM RESTAURANTS, L.C.,**
a Utah limited liability company

By: _David Harper_

Name: David Harper

Title:  Manager

**LOVELOUD RESTAURANTS, L.C.,**
a Utah limited liability company

By:  Meridian Restaurants Unlimited, LC, its
     Manager

By: _David Harper_

Name: David Harper

Title:  Manager

[Signature Page to Security Agreement]

EXHIBIT 2

**ADMINISTRATIVE AGENT**:

**CITY NATIONAL BANK**

By: _____

Name:  Chris Poppe
Title:   Senior Vice President

[Signature Page to Security Agreement]

EXHIBIT 2

*EXECUTION VERSION*

## **SCHEDULE 1**

LIST OF UNIFORM COMMERCIAL CODE FINANCING STATEMENT
FILING JURISDICTIONS

Utah Division of Corporations and Commercial Code

EXHIBIT 2

*EXECUTION VERSION*

## SCHEDULE 2

LIST OF NAMES AND ADDRESSES

**Chief Executive:** David Harper
**Address**: 5929 S. Fashion Point Drive, Suite 501
So. Ogden, Utah 84403

1.   #14035 – Logan 1
   1080 N Main Street
   Logan, UT 84341-2216

2.   #10570 – Logan 2
   202 N Main Street
   Logan, UT 84321

3.   #9601 – Brigham City
   995 S Main Street
   Brigham City, UT 84302-3145

4.   #10706 – 12th Street
   368 E 12th Street
   Ogden, UT 84404-5713

5.   #10519 – Harrison
   4168 Harrison Blvd
   Ogden, UT 84403

6.   #10511 – Antelope
   2025 N Main Street
   Layton, UT 84041

7.   #7837 – Layton
   803 N Main Street
   Layton, UT 84041-2232

8.   #10625 – 72nd South
   705 E 7200 S
   Midvale, UT 84047-5113

9.   #10484 – 47th South
   3975 W 4700 S
   Salt Lake City, UT 84118

10.  #10457 – Park City
   1720 Park Ave

**EXHIBIT 2**

*EXECUTION VERSION*

Park City, UT 84060

11.   #9661 – Tremonton
2267 West Main
Tremonton, UT 84337-9333

12. #20507 - AF Walmart
949 W. Grassland Dr.
American Fork, UT 84003

13.   #22530 - Farr West
1655 West 2700 North
Farr West, UT 84404

14.   #20352 – Clearfield
729 N Main Street.
Clearfield, UT 84015

15.   #6138 – Farmington
1252 North Hwy 89
Farmington, UT 84025

16.   #6069 - North Temple
1660 W.- North Temple
Salt Lake City, UT 84116

17.   #3428 – Taylorsville
5682 S. Redwood Rd.
Salt Lake City, UT 84123

18.   #9752 – Fort Union
7810 S 1300 E
Sandy, UT  84094-0746

19.   #10339 – South Towne
10235 S. State St
Sandy, UT  84070

20.   #9949 - West Jordan
1590 West 9000 South
West Jordan, UT 84088

21.   #17146 – Draper
147 East Bangerter Highway
Draper, UT 84020

**EXHIBIT 2**

*EXECUTION VERSION*

22.   #17878 – Lehi
      1466 E. SR 92
      Lehi, UT 84043

23.   #17830 – Saratoga
      119 E Crossroads Blvd.
      Saratoga Springs, UT   84045-5556

24.   #7980 - American Fork
      215 East State St.
      American Fork, UT  84003

25.   #23274 – Heber
      171 E Gateway Dr.
      Heber, UT  84032

26.   #7233 – Provo
      1080 S. University Ave.
      Provo, UT 84601

27.   #24378 - West Haven
      1888 W 2550 S
      West Haven, UT 84401

28.   #22687 - Devils Lake
      Gouldings Rd
      Devils Lake, ND 58301

29.   #4290 - GATEWAY
      3765 Gateway Drive.
      Grand Forks, ND 58203

30.   #11142 - 32nd AVENUE
      3151 32nd Ave. So.
      Grand Forks, ND 58201

31.   #5684 - NORTH FARGO
      1333 19th Ave. N.
      Fargo, ND 58102

32.   #23092 - WEST FARGO
      840 26th Ave. E
      West Fargo, ND 58078

33.   #7961 - NORTH MOORHEAD
      100 21st. St. N.,

EXHIBIT 2

Moorhead, MN 56560

34.   #22109 - SOUTH FARGO
      5200 31st St.
      So. Fargo, ND 58104

35.   #2209 - BISMARCK
      315 South 3rd St
      Bismarck, ND 58504-5520

36.   #8836 - DICKINSON
      321 15th Street W
      Dickinson, ND 58601-3017

37.   #12156 - EAST FERGUS
      705 East Vernon Ave.,
      Fergus Falls, MN 56537

38.   #12389 - LONG PRAIRIE
      205 Lake St.
      Long Prairie, MN 56347

39.   #11071 - NORTHSIDE
      209 Nokomis
      Alexandria, MN 56308

40.   #14060 - EASTGATE
      1611 E. Hwy. 12
      Willmar, MN 56201

41.   #11534 - REDWOOD FALLS
      516 E Bridge St.
      Redwood Falls, MN 56283

42.   #8196 - HUTCHINSON
      1185 Hwy. 7 W.
      Hutchinson, MN 55350

43.   #13377 - EAST GRAND FORKS
      926 Central Ave N.E.,
      East Grand Forks, MN 56721

44.   #1589 - SOUTH WASHINGTON
      1416 S. Washington St
      Grand Forks, ND  58201

EXHIBIT 2

*EXECUTION VERSION*

45.  #10203 - HILLSBORO
     105 6th St. SW.,
     Hillsboro, ND 58045

46.  #1663 - WEST ACRES
     1212 36th St. S.
     Fargo, ND 58103

47.  #4934 - SOUTH MOORHEAD
     2412 8th St. So.
     Moorhead, MN 56560

48.  #1908 - SOUTH UNIVERSITY
     2253 University Dr. S.
     Fargo, ND 58103

49.  #9915 - JAMESTOWN
     2314 Highway 281 S.,
     Jamestown, ND 58401

50.  #11084 - MANDAN
     1400 East Main
     Mandan, ND 58554-3770

51.  #11345 - PARK RAPIDS
     310 First St. East
     Park Rapids, MN 56470

52.  #12139 - WEST FERGUS
     528 Western Ave. North
     Fergus Falls, MN 56537

53.  #3496 - SOUTHSIDE
     303 30th Ave.
     Alexandria, MN 56308

54.  #4167 - WILLMAR
     1201 S. 1st St.
     Willmar, MN 56201

55.  #12317 - LITCHFIELD
     21 W Depot St.
     Litchfield, MN 55355

56.  #10678 - MONTEVIDEO
     586 SW 1st St.

**EXHIBIT 2**

*EXECUTION VERSION*

Montevideo, MN 56265

57.   #14134 - NEW ULM
      1922 S. Broadway
      New Ulm, MN 56073

58.   #12473 - COLUMBIA FALLS
      1211 9th St. West
      Columbia Falls, MT 59912

59.   #9036 - RESERVE
      2601 North Reserve St.
      Missoula, MT 59808

60.   #22961 - HAMILTON
      1341 N 1st St
      Hamilton, MT 59840

61.   #13293 - NORTHWEST
      315 Northwest Bypass
      Great Falls, MT  59404

62.   #17433 - SANDERS
      3130 N. Sanders
      Helena, MT  59601

63.   #11413 - BELGRADE
      6915 Jackrabbit Lane
      Belgrade, MT  59714

64.   #5165 - KING PARK
      790 King Park Drive
      Billings, MT 59102

65.   #8411 - HEIGHTS
      820 Main St.
      Billings, MT 59105

66.   #9084 - LOCKWOOD
      2813 Old Hardin Rd.
      Billings, MT 59101

67.   #9507 - RIVERTON
      2150 N Federal Blvd
      Riverton WY   82501-5206

**EXHIBIT 2**

*EXECUTION VERSION*

68.   #2178 - LARAMIE
      3001 East Grand Ave
      Laramie WY  82070-5104

69.   #13158 - KALISPELL
      1363 US Hwy. 2 East
      Kalispell, MT 59901

70.   #7518 - BROADWAY
      701 East Broadway
      Missoula, MT 59802

71.   #1666 - GREAT FALLS
      1605 10th Ave. So.
      Great Falls, MT  59405

72.   #9257 - PROSPECT
      2820 Prospect Ave.
      Helena, MT  59601

73.   #6608 - BUTTE
      1955 Dewey Blvd.
      Butte, MT  59701

74.   #2195 - BOZEMAN
      1922 W Main St.
      Bozeman, MT  59718

75.   #11036 - SOUTH BILLINGS
      4780 King Ave. East
      Billings, MT 59102

76.   #7485 - DOWNTOWN
      520 North 27th St.
      Billings, MT 59101

77.   #6118- CODY
      1902 Mountainview Drive
      Cody, WY  82414-4931

78.   #17794 - RAWLINS
      2510 E Cedar Street
      Rawlins, WY  82301-6022

79.   #23819 - SAPPHIRE
      4002 Montana Sapphire Rd

**EXHIBIT 2**

*EXECUTION VERSION*

Billings, MT 59106

80.  #9644 - TUCSON
3485 E. Ajo Way
Tucson, AZ 85713

81.  #2982 - THATCHER
2103 W. Hwy. 70
Thatcher, AZ 85552

82.  #6879 - SIERRA VISTA
415 Hwy. 90 Bypass
Sierra Vista, AZ 85635

83.  #14184 - DOUGLAS
99 E 5th St.
Douglas, AZ 85607

84. #6787 - WILLCOX
1205 Rex Allen Dr.
Willcox, AZ 85643

85. #11383 - GREEN VALLEY
19110 S I-19 Frontage Rd.
Green Valley, AZ 85629

86. #6315 - BISBEE
101 Naco Hwy.
Bisbee, AZ 85603

87. #10218 – HOLTON
403 Arizona Ave.
Holton, KS 66436

88. #10415 – LINCOLN
5940 Havelock Ave.
Lincoln, NE 68507

89. #10579 – HASTINGS
927 West 14th Street
Hastings, NE 68901

90. #10701 – SALINA
2650 South 9th Street

EXHIBIT 2

*EXECUTION VERSION*

Salina, KS 67401

91. #12128 – LINCOLN
   3810 Old Cheney
   Lincoln, NE 68516

92. #13029 – LINCOLN
   2504 O Street
   Lincoln, NE 68510

93. #14234 – JUNCTION CITY
   1802 North Washington Street
   Junction City, KS 66441

94. #17904 – LINCOLN
   201 North 84th Street
   Lincoln, NE 68505

95. #1988 – ABERDEEN
   908 Sixth Ave., S.E.
   Aberdeen, SD 57401

96. #2082 – MITCHELL
   1617 North Main Street
   Mitchell, SD 57301

97. #21514 – MANHATTAN
   401 McCall Rd.
   Manhattan, KS 66502

98. #23634 – MCPHERSON
   2201 East Kansas
   McPherson, KS 67460

99. #3597 – SALINA
   316 E. Iron Ave.
   Salina, KS 67401

100. #3909 – LINCOLN
   1448 North 48th Street
   Lincoln, NE 68504

101. #4247 – LINCOLN

**EXHIBIT 2**

*EXECUTION VERSION*

2500 North 11th Street
Lincoln, NE 68521

102. #4582 – TOPEKA
6002 S.W. 10th Street
Topeka, KS 66615

103. #4930 – LINCOLN
2805 South 48th Street
Lincoln, NE 68506

104. #5167 – BEATRICE
501 North 6th Street
Beatrice, NE 68310

105. #5492 – TOPEKA
2817 S.E. California
Topeka, KS 66605

106. #5880 – TOPEKA
3690 S.W. Topeka Blvd.
Topeka, KS 66611

107. #5957 – MANHATTAN
1328 Laramie,
Manhattan, KS 66502

108. #6677 – LINCOLN
2045 South 17th Street
Lincoln, NE 68502

109. #7061 – TOPEKA
1800 S.W. 10th Avenue
Topeka, KS 66604

110. #7906 – YORK
3627 South Lincoln Ave.
York, NE 68467

111. #8511 - LINCOLN
4230 North 27th Street
Lincoln, NE 68521

EXHIBIT 2

*EXECUTION VERSION*

112. 24915 - YORKTOWN
3102 Yorktown Drive,
Bismarck, ND 58503

EXHIBIT 2